UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PATRICIA THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-004 RLM |
| | ) | |
| MICHAEL CHERTOFF, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**I.   PROCEDURE**

On January 3, 2006, Plaintiff Patricia Thompson (Thompson), proceeding *pro se*, filed this lawsuit against Defendant Michael Chertoff, Secretary of the United States Department of Homeland Security.  Thompson claims, in part, that she was denied a job as a screening manager at the South Bend Regional Airport because of her age in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.

On July 30, 2007, Thompson, proceeding *pro se*, filed a motion to compel discovery.  On August 13, 2007, Defendant filed an objection to this motion.  On August 17, 2007, Thompson filed a reply in support of that motion.  Thompson seeks all emails, letters, memorandums, notes, or other obtainable communications in the possession of Mary Ellen Darin (Darin).  Darin is an attorney advisor with the Transportation Security Administration and served as field counsel for the commercial airports in Indiana and Michigan, which includes the South Bend Regional Airport where Thompson was denied a managerial position  (Doc. No. 46-4 at 1).  Defendant claims federal employees in management positions in the South Bend Regional Airport and high level employees in the Homeland Security Department all sought legal advice from Darin

regarding Thompson (Id. at 2-4).  Thompson seeks all documents regarding communications between Darin and these people.

This Court has previously ordered, twice, that Defendant file a supplemental privilege log so that this Court could determine whether the items Thompson seeks are protected by the attorney-client privilege.  On October 5, 2007, Defendant submitted his final amended log, and this Court now has an adequate record to rule upon Thompson's motion.  The issue this Court must resolve is whether Defendant has properly established that the attorney-client privilege protects all the documents in question from being disclosed.  This Court may rule on Thompson's motion pursuant to its referral order and  28 U.S.C. § 636(b)(1)(A).

**II.    ANALYSIS**

Fed. R. Civ. P. 26 (b)(1) permits discovery into "any matter, **not privileged**, that is relevant to the claim or defense of any party." (emphasis added).   The attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity to obtain legal advice from being subject to disclosure in discovery.  See Jenkins v. Bartlett, 487 F.3d 482, 490 (7th Cir. 2007).  The Defendant claims all of the materials Thompson seeks are protected by the attorney-client privilege.

The 7th Circuit has adopted the following general principles for the attorney-client privilege:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

United States v. White, 950 F.2d 426, 430 (7th Cir. 1991) (citations omitted).  The party seeking to invoke the attorney-client privilege bears the burden of establishing all of its elements.[1]  Id.; Ziemack v. Central Corp., 1995 WL 314526 at 3 (N.D. Ill. 1995). "The claim of privilege cannot be a blanket claim; it must be established on a document-by-document basis." Id.; Avery Dennison Corp. v. UCB Films PLC, 1998 WL 703647 at 2 (N.D. Ill. 1998).

Email strands present unique problems.  Email strands can span over several days, and they may have many different recipients and authors.  Finally, some emails in which counsel are involved may contain factual information, which is not protected by the privilege, while others are exclusively legal advice.  See generally Muro v. Target Corp., 243 F.R.D. 301, 305 n. 4 (N.D. Ill. 2007) (citations omitted).  Consequently, each individual email in a string must be analyzed separately.

   1.  Document with Bates Number 3112

Defendant claims that document with Bates Number 3112 is protected by the attorney-client privilege.  The document is actually a string of emails broken up into three communications that this Court will label parts A, B, and C.

Email part A was originally authored by a non-attorney and the primary recipients included both Darin, an attorney, and several non-attorneys.  According to Defendant's log, the email discusses an appropriate response to Thompson's actions.  The email includes a suggestion to Darin that Thompson's conduct might be deserving of criminal investigation.  This communication is not protected by the attorney-client privilege.  The email is not seeking legal

---

[1] A government entity is entitled to the attorney-client privilege as any other client.  See In re Witness before Special Grand Jury 2000-2, 288 F.3d 289, 291 (7th Cir. 2002).

advice.  The non-attorney author is not seeking legal advice but merely discussing or restating facts to a variety of people in which one of the recipients, Darin, was an attorney.  Darin, in effect, simply "sat in" on the communication.  See Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453 (N.D. Ill. 2006) (indicating that an attorney's mere presence does not shield a communication).  Finally, a suggestion that a person's activities may be criminal is not seeking legal advice.  Simply because legal issues may be implicated does not mean that legal advice is being sought.  This communication is not seeking legal advice from an attorney, and as a result, it is not protected by the attorney client privilege and must be disclosed.

     Email B and C are protected by the attorney-client privilege.  Email part B is from an attorney, Darin, to James Roche, the Federal Security Director at South Bend Regional Airport.  Email part C is simply a forwarded email of email B from Darin to other recipients.[2]  Darin indicates in both emails how she is going to advise others in management and how she would proceed.  The topic of the communication is legal advice because Darin is discussing how she will "advise" others.  The emails are regarding legal advice from an attorney to her clients and they are protected.

---

[2]"It is well settled that the dissemination of a communication between a corporation's lawyer and an employee of that corporation to those employees directly concerned with such matters does not waive the attorney-client privilege."  See Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp., 62 F.R.D. 454, 456 (N.D. Ill. 1974).  Furthermore, a government entity is entitled to the attorney-client privilege as any other client.  See In re Witness before Special Grand Jury 2000-2, 288 F.3d at 29. All of the non-attorneys involved in this case are "directly connected."  They are either high level management within the Defendant's department, or Human resources employees who are directly concerned with the employment issues Thompson has raised in this lawsuit.

In summary, email part A is not protected by the attorney-privilege, but emails B and C are protected by the attorney-client privilege. Defendant only needs to disclose email A of communication labeled Bates No. 03112.

      2.     <u>Documents with Bates Number 3113 to 3117</u>

Again, these documents can be broken down into several emails. This Court will label the communications as emails D, E, F, G, H, I, and J.

Emails D and G are authored by James Roche, a non-party, and sent to Darin and several other non-attorneys. In both emails, Roche is telling Darin and others that "action" should be taken. But commanding people to take action is not seeking nor giving legal advice. And again, even though an attorney is involved in these emails, that does not mean that the communication is protected. <u>See</u> <u>Kodish,</u> 235 F.R.D. at 453. These communications are not protected by the attorney-client privilege because Roche is not seeking legal advice from an attorney.

In email E and H, Darin authored the emails, and in both emails Darin seeks legal advice regarding Thompson's actions from another attorney advisor, Deborah Katz, and Stephen Iannuci of the Office of Investigations. Several non-attorneys were carbon copied on these emails. In emails I and J, those non-attorneys supplemented Darin's emails to the attorney advisor with more information. These communications are protected by the attorney-client privilege. The attorney-client privilege applies to conversations between government lawyers and administrative personnel. <u>See</u> <u>In re Witness Before Special Grand Jury 2000-2</u>, 288 F.3d 289, 291 (7th Cir. 2002). Katz is a government lawyer, and the non-attorneys, both by themselves and via Darin, are seeking legal advice from Katz. Consequently, emails E, H, I, and J are protected by the privilege.

5

Email F contains a message and a carbon copy of email E from one non-attorney to another non-attorney. Defendant no longer claims that email F is protected by the attorney-client privilege, and Defendant withdrew his claim for good reason because the email is between two non-attorneys and the author is not seeking legal advice. Therefore, email F must be disclosed if it has not been already.

In summary, emails D and G are not protected by the attorney client privilege. Email F must also be disclosed if it has not been already. Emails E, H, I, and J, are protected by the attorney client privilege.

        3.     <u>Documents with Bates Number 3160, 3162, 3163.</u>

Document with Bates Numbers 3160, 3162, and 3163 are single emails from Darin to one non-attorney. These emails are clearly protected by the attorney-client privilege. Darin, an attorney, is either providing legal advice about how to proceed with Thompson or seeking legal instructions from non-attorneys. Darin provides advice on how to handle Thompson's situation based on her investigation, and she advises regarding the protection of the attorney-client privilege. Also, Darin seeks instructions with how to proceed with legal instructions to other non-attorneys. This Court finds no indication that these communications are not protected.

        4.     <u>Document with Bates Number 3161</u>

Document with Bates Number 3161, the Defendant has withdrawn his claim that it is protected by the attorney-client privilege. It must be provided to Thompson if it has not been already.

        5.     <u>Documents with Bates Number 3109 to 3111</u>

6

The documents with Bates Number 3109 to 3111 are a draft termination letter from Darin to a non-attorney. Unlike the other communications, Defendant also claims these documents are protected by the work produce doctrine. The work product doctrine protects against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R. Civ. P. 26(b)(3). The letter undoubtedly contains Darin's mental impressions, conclusions, opinions, or legal theories. In order to be considered "work product," the materials must have been prepared in anticipation of litigation or trial. BASF Aktiengesellschaft v. Reilly Industries, Inc., 224 F.R.D. 438, 441 (S.D. Ind. 2004). Litigation need not be imminent, but the primary purpose behind creating the document must be for aid in the possibility that litigation will happen in the future. See Binks Mfg. Co. v. National Presto Industries, Inc., 709 F.2d 1109, 1119 (7th Cir. 1983). Darin's termination letter was clearly not drafted in the ordinary course of business. It was drafted with the sole purpose of possible litigation so that Defendant's reasons for discharging Thompson would be as clear as possible, or at least so Defendant would have something to point to as proof of his motive. Thompson has not attempted to establish a compelling need for the draft letter, and as a consequence, the draft letters are protected from disclosure.

### III.   CONCLUSION

For the reasons stated, Plaintiff's motion to compel [Doc. No. 45] is **GRANTED IN PART**. Merely carbon coping an attorney, or listing an attorney as one of many recipients, on widely circulated emails is insufficient to create privileged communications. Without more, and

this Court has not examined anything more than the log, Defendant has failed to establish the attorney-client privilege that would justify withholding materials sought in discovery.[3]

Because this Court has found the attorney-client privilege does not apply to emails A of Bates number 3112, D of Bates number 3114, G of Bates number 3117, and F of Bates number 3113, they must be disclosed.  The document of Bates number 3161 must be disclosed because Defendant has agreed to produce it.  All remaining documents are protected by the attorney-client privilege or work product doctrine.

Defendants also filed a motion for an in-camera inspection and two motions to seal, which this Court  **DENIES AS MOOT** [Doc. No.s 56, 57, & 58].

**SO ORDERED.**

Dated this 15th Day of November, 2007.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge

.

---

[3]If counsel believes that the content of the emails themselves would establish privileged communications and that the information this Court has ordered to be disclosed is so important that it cannot be disclosed, counsel may file a motion to reconsider along with a request for an in-camera inspection of the emails in question.