UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

PATRICIA A. THOMPSON,      )
            )
       Plaintiff      )
            )
     v.            )     CASE NO. 3:06-CV-004RM
            )
MICHAEL A. CHERTOFF, SECRETARY )
UNITED STATES DEPARTMENT OF   )
HOMELAND SECURITY,       )
TRANSPORTATION SECURITY     )
ADMINISTRATION,         )
            )
       Defendant     )

## OPINION and ORDER

This cause is before the court on the motion of Michael A. Chertoff, Secretary of the Department of Homeland Security, for summary judgment on Patricia Thompson's claims against him in his official capacity. Ms. Thompson claims that while she was an employee of the Transportation Security Administration, she was treated in a discriminatory manner because of her age and sex in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e *et seq* ("Title VII"), and the Age Discrimination in Employment Act of 1967 ("ADEA"). Ms. Thompson further claims that she was subjected to a hostile work environment and terminated in retaliation for filing a complaint with the EEOC. For the reasons that follow, the court grants Secretary Chertoff's summary judgment motion.

I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are viewed in the light most favorable to Ms. Thompson,[1] the nonmoving party. In November 2001, Congress created the Transportation Security Administration ("TSA") to oversee the federalization of commercial airport security. In February 2002, Ms. Thompson applied for the position of Supervisor Workforce Action Team with the TSA by completing an online form. After completing her application, Ms. Thompson traveled to Chicago O'Hare International Airport for testing and evaluation, and on March 22, 2002, the TSA made her a conditional appointment offer, contingent upon her successful completion of training. The conditional appointment listed South Bend as Ms. Thompson's Declared Permanent Duty Location.

Ms. Thompson accepted the offer, which set her starting salary at $36,400, plus an 8.64% locality pay adjustment, for a total starting salary of $39,544.96 per annum. Ms. Thompson's appointment began on April 24, 2002, at which time she was sworn into federal service. Ms. Thompson's service computation date was later changed to April 14, 2002 to reflect the beginning of her mandatory one-year probationary period. After completing her training, Ms. Thompson claims that she was assigned to the Baltimore Washington International Airport (BWI) where she worked as both a Supervisor and Screener from May 2002 until July 23, 2002. In addition, Ms. Thompson served on "jump teams" that federalized Orlando

---

[1]Ms. Thompson is a Caucasian female, born July 7, 1952.

2

International Airport (MCO), Chicago O'Hare International Airport (ORD), Dallas-Fort Worth International Airport (DFW), and Indianapolis International Airport (IND) between April and September 2002. On June 11, 2002, the TSA issued a Standard Form 50, which changed Ms. Thompson's home duty station to Providence, Rhode Island. Then, in September, Ms. Thompson was "dropped" at the South Bend Regional Airport (SBN) as part of the jump team that federalized the airport.

Before being dropped at South Bend, Ms. Thompson responded to a TSA memo that offered employees hired on or before April 26, 2002 the opportunity to submit requests for salary reconsideration. TSA made renegotiation available to employees who met two criteria: 1) specialized experience directly related to the work of passenger and baggage screening, and 2) experience within the last year. Ms. Thompson submitted her documentation on June 6, 2002, requesting a salary increase to $56,4000. Deputy Program Manager for HR Management Gregg Knott sent Ms. Thompson a letter denying her request on August 30, 2002. Secretary Chertoff claims that the request was denied because Ms. Thompson didn't have the necessary related experience within the previous year; Ms. Thompson argues that she was denied a salary increase because of her sex. She points to two male employees, Jose Asusta and William Buckley, who allegedly were given salary increases even though neither had the requisite experience within the previous year. Greg Knott rebuts this contention, claiming that Mr. Asusta had related hotel security experience.

3

Also before arriving at South Bend, Ms. Thompson contacted South Bend's Federal Security Director ("FSD"), James Roche, to discuss promotional opportunities at South Bend. On August 12, 2002, Ms. Thompson sent FSD Roche a cover letter, resume, and supporting documentation requesting consideration for either the Scheduling Operation Office or Screening Manager positions at South Bend. Ms. Thompson noted in her cover letter that she was proud to say that South Bend was her "home airport." In October 2002, the Assistant Federal Security Director ("AFSD") at South Bend, John Compston, began interviewing people for the Screening Manager Position. AFSD Compston eventually selected Stacy Smith, a white female under the age of 40. AFSD Compston never offered Ms. Thompson an explanation for why she wasn't selected for the position.

Ms. Thompson alleges that AFSD Compston discriminated against her based on her age when he didn't select her as Screening Manager. In support of her claim, Ms. Thompson contends that the interviews of herself and potential candidate David Walker, a black male over 40, were shorter and less formal than Ms. Smith's interview. Ms. Thompson also notes that Ms. Smith had less experience on the jump team and that her husband worked at South Bend as the checkpoint law enforcement officer. Ms. Thompson agrees that neither AFSD Compston nor FSD Roche made any statements indicating that age was a factor in selecting Ms. Smith.

On September 30, 2002, Ms. Thompson arrived at South Bend to participate in the federalization of the passenger screening functions. After completion of the

4

federalization process, Ms. Thompson remained at South Bend, and on October 16, she sent a letter to FSD Roche formally requesting to be released from South Bend as her permanent duty station. Secretary Chertoff maintains that this request was denied because management determined that Ms. Thompson's services were needed at South Bend.

In November 2002, AFSD Compston assigned Ms. Thompson to be the site supervisor at the Purdue University Airport in Lafayette, Indiana during its federalization. AFSD Compston claims that he provided Ms. Thompson with a written work schedule that noted that TSA employees should work a split shift, but that Ms. Thompson instead claimed excessive overtime for each of the TSA employees working at Lafayette. Ms. Thompson says that she faxed the employee time sheets directly to Oklahoma City per HR's request and that she wasn't provided a work schedule until November 17, two days after she had already completed the time and labor reports at issue. Ms. Thompson also contends that AFSD Compston failed to relay to FSD Roche that he didn't give her a written work schedule for the pay period ending November 16, and he failed to explain that Ms. Thompson's time sheet was corrected immediately upon his instruction to do so.

On November 19, FSD Roche met with Ms. Thompson in Lafayette to express his displeasure with the time sheets, and he asked Ms. Thompson to clarify her home airport situation. Ms. Thompson acknowledged that she had been claiming per diem payments while at South Bend because she believed that her home airport was Providence. Ms. Thompson argues that when she was assigned

to South Bend, it was designated as her home duty station, but that she should've been assigned to St. Petersburg-Clearwater International Airport. Ms. Thompson states that her status should have been changed from the mobile screening force to the permanent screening force once she returned to her home duty station, but this wasn't done. Ms. Thompson further maintains that she was allowed to claim per diem as a travel cost while assigned to South Bend and Lafayette because the Standard Form 50 listed Providence as her home duty station.

After the November 19 discussion, FSD Roche notified Ms. Thompson that she was being transferred to Providence. FSD Roche later learned that Ms. Thompson was trying to get transferred to St. Petersburg-Clearwater. As a result, FSD Roche telephoned and emailed other TSA managers about Ms. Thompson's alleged misconduct. Ms. Thompson believes that these calls and emails circulated untruths about her and created a hostile work environment. Ms. Thomspon also claims that FSD Roche didn't check the procedures for faxing time sheets or submitting per diem vouchers before accusing her of violations. Ms. Thompson didn't work at South Bend or another airport from November 20 through the date of her termination on March 7, 2003.

On November 20, Ms. Thompson contacted the TSA's Office of Civil Rights to lodge an EEO complaint. On December 13, FSD Capello at St. Petersburg-Clearwater notified Ms. Thompson that she had been placed on administrative leave with pay until further notice. At the time, Ms. Thompson was on her way to report to St. Petersburg-Clearwater for her next work assignment. FSD Capello

6

advised Ms. Thompson that all personnel matters would be coordinated with her last duty station in South Bend. On December 16, Ms. Thompson had her initial interview with the EEO Counselor, and she filed her formal complaint on February 6, 2003.

On March 7, 2003, FSD Roche and AFSD Compston met with Ms. Thompson to give her written notification of her termination. FSD Roche contends that he terminated Ms. Thompson because her actions lacked integrity. He claims that Ms. Thompson misrepresented her home duty location, collected per diem to which she wasn't entitled, and misrepresented her overtime hours on time and labor reports. Because these actions occurred during her probationary period, FSD Roche sought to terminate Ms. Thompson's employment.

Ms. Thompson argues that she was subjected to a hostile work environment and discharged from her position in retaliation for making her EEO complaint. Secretary Chertoff says there is no evidence that any of the TSA employees in question knew that Ms. Thompson had made a complaint, and by the time FSD Roche became aware of the complaint in January 2003, he already had set into motion Ms. Thompson's termination. In September 2004, the EEOC held a hearing to consider Ms. Thompson's allegations, and on August 4, 2005, the Administrative Law Judge concluded that she did not prove that Secretary Chertoff had discriminated against her.

II. DISCUSSION

7

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

### A. Sex Discrimination

Ms. Thompson claims that Secretary Chertoff discriminated against her based on her sex by denying her request to renegotiate her initial salary. Title VII makes it unlawful for an employer to "discriminate against any individual with

8

respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To succeed on her Title VII claim, Ms. Thompson may either: (1) present evidence under the direct method of proof that her sex was determinative in the decision to deny her request for a salary increase; or (2) employ the indirect, burden-shifting method of proof to establish sex discrimination. *See* Kampmier v. Emeritus Corp., 472 F.3d 930, 939 (7th Cir. 2007); Phelan v. Cook County, 463 F.3d 773, 779  (7th Cir. 2006).

To establish a prima facie case under the direct method, Ms. Thompson must present evidence, either direct or circumstantial, that her salary would have been increased but for her sex. *See* Steinhauer v. DeGolier, 359 F.3d 481, 485 (7th Cir. 2004). Essentially, the direct method requires an admission by the decisionmaker that the adverse employment action was "based on the prohibited animus." Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994); *see also* Rudin v. Lincoln Land Comm. College, 420 F.3d 712, 720 (7th Cir. 2005). Absent evidence of an outright admission, Ms. Thompson may still proceed under the direct method, but she must present sufficient circumstantial evidence that points directly to a discriminatory reason for the termination decision. Ptasznik v. St. Joseph's Hosp., 464 F.3d 691, 695 (7th Cir. 2006); *see also* Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).

Ms. Thompson offers neither an acknowledgment of discriminatory intent on the part of Secretary Chertoff nor circumstantial evidence that would provide the basis for an inference of discrimination. Ms. Thompson presents no evidence

9

of admissions of discriminatory animus by Mr. Knott, the supervisor that processed the salary renegotiations for the TSA. In fact, other than the letter denying the request to increase her salary, Ms. Thompson had no direct contact with Mr. Knott. Accordingly, Ms. Thompson must proceed under the indirect method of proof. *See* Gorence v. Eagle Food Ctrs., Inc., 242 F.3d 759, 762 (7th Cir. 2001).

Under the indirect method, Ms. Thompson may establish a prima facie case of discrimination by demonstrating that: (1) she was a member of a protected class; (2) she was otherwise qualified for a salary increase; (3) she suffered an adverse employment action; and (4) that similarly situated employees outside the class were treated more favorably. Goodwin v. Bd. of Trustees of Univ. of Ill., 442 F.3d 611, 617 (7th Cir. 2006). Upon such a showing, the burden shifts to Secretary Chertoff to articulate a legitimate nondiscriminatory reason for Ms. Thompson not being offered a higher salary. Herron v. DaimlerChrysler Corp., 388 F.3d 293, 299 (7th Cir. 2004). If Secretary Chertoff meets that burden, Ms. Thompson bears the ultimate burden to show that Secretary Chertoff's proffered reason is a pretext for sex discrimination. Id.

The parties don't dispute that Ms. Thompson is a member of a protected class based on her gender and that not giving her the salary increase was an adverse employment action. Secretary Chertoff argues that Ms. Thompson hasn't demonstrated that she was otherwise qualified for the increase because she didn't meet the two criteria listed in the TSA memo on eligibility. Specifically, Mr. Knott

stated in his letter denying the increase that Ms. Thompson didn't have "at least one year of recent specialized experience relevant to screening passenger[s] and/or baggage prior to employment with TSA  . . . ." In his testimony before the Administrative Law Judge, Mr. Knott explained that the previous experience had to be both recent (meaning within the prior year) and lasting at least one year. In evaluating Ms. Thompson's request, Mr. Knott determined that she didn't meet these requirements. Ms. Thompson contends that her experience as a Security Screener at the South Bend Airport in December 2001 qualified her for salary reconsideration. While this experience wasn't within the previous year, Ms. Thompson claims that she has raised a question of fact regarding whether she was qualified for the salary increase.

If Ms. Thompson could establish that she was otherwise qualified, she also must point to a similarly situated employee who received more favorable treatment but was not a member of the protected class. To prove that an individual is similarly situated, Ms. Thompson must point to an employee who is directly comparable in all material respects, i.e. someone who "occupied the same job level and engaged in similar past misconduct, but as a result of [the] misconduct [the employee] was treated differently (*i.e.*, more favorably) for no legitimate reason." Jordan v. City of Gary, 396 F.3d 825, 834 (7th Cir. 2005); *see also* Ineichen v. Ameritech, 410 F.3d 956, 960-961 (7th Cir. 2005). Ms. Thompson argues that two male employees, Mr. Asusta and Mr. Buckley, received salary increases even though neither had prior airport screening experience. Secretary Chertoff

challenges this contention with regard to Mr. Asusta, claiming that he met the criteria for salary reconsideration. Regardless, Ms. Thompson has not provided information regarding either Mr. Asusta's or Mr. Buckley's prior experience or job level. As such, they cannot be considered similarly situated individuals.

Even if Ms. Thompson could establish a prima facie case, Secretary Chertoff produced evidence sufficient to support the nondiscriminatory reason for denying Ms. Thompson's request. Mr. Knott's letter explained to Ms. Thompson that she didn't have the necessary experience to qualify for a salary increase based upon the set TSA criteria. Ms. Thompson may attempt to show that this explanation was a pretext for discrimination by demonstrating that Mr. Knott gave a dishonest explanation for his actions. *See* Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000) (pretext "means something worse than a business error; pretext means deceit used to cover one's tracks."). So long as Mr. Knott's decision to deny the pay increase was in good faith, however, the court can't second-guess that decision regardless of whether or not the court believes those actions were correct. *See* Jackson v. E.J. Brach Corp., 176 F.3d 971, 983 (7th Cir. 1999) (holding that so long as the employer honestly believes in the proffered reason for its actions, then there is no pretext "even if the reasons are foolish or trivial or even baseless."). Courts can't impose on employers their own ideas of what constitutes a prudent business decision; they "can assess only the question [of] whether an employer has taken an action for a forbidden reason." Leonberger v. Martin Marietta Materials, Inc., 231 F.3d 396, 399 (7th Cir. 1999).

12

Ms. Thompson hasn't produced any evidence that Secretary Chertoff's proffered reason for not renegotiating her starting salary was a lie or had no basis in fact. *See* Balderston v. Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 323 (7th Cir. 2003) ("To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer made a mistake or that the employer's reason was not good enough to support its decision."). Her allegations of sex discrimination are based on speculation alone and don't show that Mr. Knott did not honestly believe in the reasons that led him to conclude that Ms. Thompson wasn't eligible for a salary increase.

Ms. Thompson hasn't presented sufficient evidence of discriminatory motivation to create a genuine issue of fact for trial. Accordingly, Ms. Thompson hasn't carried her burden on her sex discrimination claim, and Secretary Chertoff is entitled to summary judgment.

## B. Age Discrimination

Ms. Thompson alleges that Secretary Chertoff discriminated against her based on her age by not hiring her as the Screening Manager at the South Bend Regional Airport. The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on a discrimination claim under the ADEA, a plaintiff must show that age "actually motivated the employer's

13

decision . . . [t]hat is, the plaintiff's age must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (citation omitted).

Similar to her sex discrimination claim, Ms. Thompson may prove age discrimination either directly or by using the indirect, burden-shifting approach. See Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006); Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Ms. Thompson hasn't shown that she would've been offered the Screening Manager position but for her age. She presents no evidence that age was a factor in either FSD Roche's or AFSD Compston's decision-making process. Instead, Ms. Thompson asserts that she has more experience than Ms. Smith, who was hired for the position, and that her interview with AFSD Compston was merely perfunctory. This reasoning alone doesn't support a casual link between Ms. Thompson not being offered the position and age based discrimination. Accordingly, Ms. Thompson hasn't satisfied her burden under the direct method.

Under the indirect method, Ms. Thompson may prove a prima facie case of discrimination by demonstrating that: (1) she was a member of the protected class of forty or older; (2) she was otherwise qualified for the promotion to Screening Manager; (3) she applied for the position and was not given it; and (4) that substantially younger employees who were similarly situated were treated more favorably. Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir. 1998); see also

14

Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998) (clarifying that substantially younger "means at least a ten-year age difference; any age disparity less than ten years is 'presumptively insubstantial.'"). The parties do not dispute that Ms. Thompson successfully established that she was over the age of forty at the time her promotion was denied or that AFSD Compston's decision to hire someone younger was an adverse employment action resulting in the favorable treatment of a younger employee.

Since Ms. Thompson established a prima facie case, Secretary Chertoff must produce sufficient evidence to support its nondiscriminatory reason for not promoting Ms. Thompson. AFSD Compston maintains that he hired Ms. Smith because she was the best candidate out of the seven interviewed. Using on-the-job performance as an indicator, AFSD Compston evaluated each candidate's demonstrated leadership ability, potential for further leadership development, communication skills, ability to develop staff, background, submitted resumes and recommendations, and job application documents. Through this evaluation, AFSD Compston concluded that Ms. Smith was the strongest candidate based on her leadership, communication, and developmental skills.

Ms. Thompson may attempt to show that she was a victim of discrimination by demonstrating that AFSD Compston's reason for promoting Ms. Smith rather than Ms. Thompson is a pretext for age discrimination. *See* Milbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir. 2002) (noting that the plaintiff would have to establish that her credentials were "so superior to the credentials of the person

15

selected for the job that no reasonable person, in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff for the job in question."); *see also* <u>Jordan v. City of Gary</u>, 396 F.3d at 834. Ms. Thompson hasn't produced any evidence that AFSD Compston's reason for not choosing her for the Screening Manager position was a lie or had no basis in fact. Although Ms. Thompson claims that she was entitled to Veteran Preference points, this doesn't show that AFSD Compston didn't have a good faith belief that Ms. Smith was better qualified. Likewise, Ms. Thompson argues that the TSA violated its own policy by hiring Ms. Smith because she hadn't been employed in her current position for 90 days as required by administrative regulations. Even if this were true, a policy violation doesn't tend to show that AFSD Compston's reason for hiring Ms. Smith instead of Ms. Thompson was deceitful. Similarly, that AFSD Compston could have surmised Ms. Thompson's age "just by looking at her" or that Ms. Smith's husband shared a law enforcement background with FSD Roche and AFSD Compston are not evidence of pretext.

Ms. Thompson hasn't presented a genuine issue of material fact for trial and, therefore, hasn't carried her burden on her age discrimination claim. As such, Secretary Chertoff is entitled to summary judgment.

### C. Retaliation

42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because

[she] has opposed any practice made an unlawful employment practice by [Title VII]." Thus, Title VII protects "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation from complaining about the types of discrimination it prohibits." <u>Miller v. Am. Family Mut. Ins. Co.</u>, 203 F.3d 997, 1007 (7th Cir. 2000). The ADEA similarly prohibits retaliation. *See* <u>Weigel v. J.W. Hicks, Inc.</u>, 2007 WL 2076033, at *5 (N.D. Ind. July 18, 2007) (*citing* 29 U.S.C. § 623(a)(1)). To establish a claim for retaliation, Ms. Thompson may proceed under either the direct or indirect method of proof. *See* <u>Rogers v. City of Chicago</u>, 320 F.3d 748, 753 (7th Cir. 2003) (citing <u>Logan v. Kautex Textron N.A.</u>, 259 F.3d 635, 638-639 (7th Cir. 2002)).

Ms. Thompson claims Secretary Chertoff retaliated against her by subjecting her to a hostile work environment and terminating her for filing claims of sex and age discrimination with the EEOC. Ms. Thompson has not shown a casual link demonstrating that she would not have been subject to these actions but for her contact with the EEOC; therefore, she must proceed under the indirect method of proof. Ms. Thomspon may establish a prima facie case of retaliation by showing that (1) she engaged in a statutorily protected activity; (2) she performed her job according to Secretary Chertoff's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated employee who did not engage in the protected activity. <u>Griffin v. Porter</u>, 356 F.3d 824, 828 (7th Cir. 2004); *see also* <u>Stone v. City of Indianapolis Pub. Utils. Div.</u>, 281 F.3d 640, 644 (7th Cir. 2002). Because Secretary Chertoff has

17

come forward with a legitimate nondiscriminatory reason for terminating Ms. Thompson, the court will assume that she has satisfied the requirements of a prima facie case and will examine whether she has demonstrated that Secretary Chertoff's proffered reason is a pretext for discrimination. *See* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.").

At the summary judgment stage, Ms. Thompson may prove that she was subject to a hostile work environment if she can show that the discriminatory conduct at issue was sufficiently severe or pervasive to alter the conditions of her employment. Harris v. Forklift Sys., Inc., 510 U.S.17, 21 (1993); *see also* Russell v. Bd. of Trs. of Univ. of Ill. at Chicago, 243 F.3d 336, 342-343 (7th Cir. 2001). To meet this standard, Ms. Thompson must show that her work environment was both subjectively and objectively hostile. McKenzie v. Milwaukee County, 381 F.3d 619, 624-625 (7th Cir. 2004). The subjectivity requirement ensures that Ms. Thompson, herself, regarded her environment as abusive, while the objectivity requirement considers the likely impact on a reasonable employee in Ms. Thompson's position. Haugerud v. Amery Sch. Dist., 259 F.3d 678, 693 (7th Cir. 2001).

In determining whether a work environment is objectively hostile, "a court must consider all circumstances, including 'the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. at 23). While Title VII prohibits an abusive working environment, it doesn't mandate admirable behavior from employers. Russell v. Bd. of Trs., 243 F.3d at 343; *see also* Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("Title VII does not become a 'general civility code.'"). To rise to the level of actionable harassment, the alleged misconduct must alter the conditions of Ms. Thompson's employment "in a significant way." Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997) ("The workplace that is actionable is one that is 'hellish.'") (citation omitted).

Ms. Thompson argues that a reasonable trier of fact could find that FSD Roche's and AFSD Compston's conduct created an actionable work environment. In particular, Ms. Thompson asserts that after she spoke with FSD Roche on November 19, 2002, he emailed other TSA managers about her alleged misconduct and perpetuated falsehoods about her performance. Ms. Thompson contends that AFSD Compston also created a hostile work environment by not providing her with a written work schedule when she was employed at Lafayette, by failing to tell FSD Roche that she immediately corrected her time sheet upon request, and by failing to check the TSA operating procedures for faxing employee time sheets. In addition, FSD Roche didn't review Ms. Thompson's personnel file for documentation of her home duty station before accusing her of improperly receiving per diem payments.

Ms. Thompson may have been subjectively affected by the conditions of her employment, but she hasn't shown that these conditions were so severe as to create an objectively hostile work environment. FSD Roche's email didn't unreasonably alter the conditions of Ms. Thompson's employment. *See* <u>Faragher v. City of Boca Raton</u>, 524 U.S. at 788 ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not constitute harassment); <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 362 (7th Cir. 1998) (holding that the Seventh Circuit has a "safe harbor for employers in cases in which the alleged harassing conduct is too tepid or intermittent or equivocal to make a reasonable person believe that she has been discriminated against on the basis of her sex."). Likewise, the manner in which FSD Roche and AFSD Compston handled Ms. Thompson's discipline do not amount to actionable harassment. Moreover, the majority of events that Ms. Thompson considers to be hostile occurred before she even complained to the EEOC and so couldn't have been in retaliation for Ms. Thompson's protected activity. *See* <u>Hayes v. Potter</u>, 310 F.3d 979, 982-983 (7th Cir. 2002) ("[I]t is not enough that the decisionmaker should have known about a discrimination complaint; the decisionmaker must have actual knowledge of the complaint for [the] decision to be retaliatory.").[2] Accordingly, Ms. Thompson hasn't carried her burden on her hostile work environment claim.

---

[2]In fact, Ms. Thompson was placed on administrative leave soon after making her complaint and wasn't actually present from November 20, 2002 through the date of her termination on March 7, 2003.

Ms. Thompson similarly cannot prevail on her retaliation claim because she hasn't demonstrated that Secretary Chertoff's legitimate nondiscriminatory reason for terminating her was a pretext for discrimination. FSD Roche maintains that he terminated Ms. Thompson because she misrepresented her home duty station, improperly recorded overtime hours, and collected per diem payments to which she wasn't entitled during her probationary period. In response, Ms. Thompson argues that other supervisors, including Mark Deel and Bryan Jenisch, also had errors in their personnel papers regarding their home duty stations but weren't disciplined as a result. She further claims that she followed the established procedure for submitting her time and that AFSD Compston failed to give her a written work schedule outlining the TSA overtime policy. She also notes that FSD Roche and AFSD Compston both testified that she might have been correct in recording her time. Finally, Ms. Thompson contends that TSA admitted making mistakes with her home duty station and that she had travel authority to claim per diem payments.

Even if each of these arguments is taken as true, Ms. Thompson still hasn't shown that FSD Roche's explanation didn't encompass the real reasons that she was terminated. Although Ms. Thompson challenges the propriety of FSD Roche's reasoning, she submits no evidence suggesting that the decision to terminate her for a purported lack of integrity was a deliberate falsehood. *See* Hague v. Thompson Distrib. Co., 436 F.3d 816, 823 (7th Cir. 2006) ("[T]o show pretext, [plaintiff] must show more than [defendant's] decision was mistaken, ill considered

21

or foolish, [and] as long as [the employer] honestly believes those reasons, pretext has not been shown."). That Ms. Thompson might not have received the proper training or that FSD Roche didn't give her official warnings or notice before firing her also doesn't establish pretext. *See* <u>Debs v. Northeastern Ill. Univ.</u>, 153 F.3d 390, 396 (7th Cir. 1998) (even a foolish, trivial, or even baseless decision, if honestly believed by the employer, is not pretextual). Accordingly, Secretary Chertoff is entitled to summary judgment on Ms. Thompson' retaliation claims.

### D. Claims Under Section 1981

Ms. Thompson also claims that Secretary Chertoff violated 42 U.S.C. § 1981. Section 1981 prohibits discrimination against an employee "on the grounds of race in the 'mak[ing] and enforc[ing] of contracts.'" <u>Thanongsinh v. Bd. of Educ.</u>, 462 F.3d 762, 782 (7th Cir. 2006); <u>Morris v. Office Max, Inc.</u>, 89 F.3d 411, 413 (7th Cir. 1996). To prevail on a § 1981 claim, Ms. Thompson must demonstrate that she was the victim of intentional racial discrimination. *See* <u>Yarbrough v. Tower Oldsmobile, Inc.</u>, 789 F.2d 508, 510 (7th Cir. 1986). Ms. Thompson hasn't claimed that the alleged discrimination was a result of racial bias; she testified that her § 1981 claim was based on the same employment activity as her Title VII and ADEA claims. Because § 1981 doesn't provide a remedy for either sex or age discrimination, Secretary Chertoff is entitled to summary judgment on Ms.

Thompson's § 1981 claim.[3]


III.  CONCLUSION

For the foregoing reasons, the court GRANTS Secretary Chertoff's motion for

summary judgment [Doc. No. 61]. The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED: April 29, 2008


    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

---

[3]Moreover, Ms. Thompson abandoned her arguments under § 1981 by failing to respond
to this issue in her objection to defendant's motion for summary judgment.